Exhibit 7 -Email from V. Capon U.S. EPA dated 9/1/23

| | |
|---|---|
| From: | Capon, Virginia |
| To: | jahearn@couchwhite.com; agiuda@couchwhite.com |
| Cc: | Davis, Leilani; Chong, Margaret |
| Subject: | FW: Former CP Rail Maintenance Yard Site |
| Date: | Friday, September 01, 2023 2:12:39 PM |

Dear John and Alita,

I'm replying to your email in Leilani's temporary absence. As you know, on August 17, 2023, Leilani sent you an email indicating that EPA needed to receive any further comments you may have on EPA's August 8, 2023 draft of the administrative order (Order) for a removal action at your client LFP of Whitehall LLC's (LFP's) property by Monday, August 21 or we would need to terminate negotiations and consider enforcement options.

EPA's email also indicated that it would not be further extending the time for your client's response to EPA's June 21, 2023 Request for Information letter under CERCLA Section 104(e), which was due on August 18, 2023. Your August 18th email response to Leilani's email contains certain inaccuracies and omissions, and was inadequate as a basis to continue negotiations or provide an extension to reply to the Request for Information.

As you know, on the first negotiation call on June 29, 2023, it was agreed that we would conclude negotiations on the Order, which was sent to you on June 21st, by the end of August. EPA was surprised to learn from your August 18 email that the agreed upon goal might not be achievable.

With regard to providing some of the information that was eventually requested by EPA in the Request for Information letter, Leilani reached out to you in August and September of 2022, in an effort to informally obtain such information, in particular documents related to the purchase of LFP and LFP's ownership. While you eventually provided some documents to EPA, the information was incomplete, which resulted in EPA seeking the information pursuant to Section 104(e) of CERCLA.

Regarding your comment that your client is eager to cooperate with EPA and perform the necessary cleanup work, the facts seem to suggest otherwise. For example, on our July 19th call, Mr. Fitzpatrick had said he didn't know if performing the cleanup was worth it given the value of the Site property and EPA's estimated cost of the cleanup. On that call and on our August 8th call, Alita stated she would facilitate obtaining cost estimates from contractors for your client. Thereafter, EPA inquired about these estimates and was told there was no update because the firm was not able to reach your client to discuss it.

Overall, EPA is concerned about the lack of responsiveness during these negotiations. As you know, EPA's entreaties to Alita and you in writing or in voicemail have not yielded timely responses. Notably, on a number of occasions, you informed EPA that you couldn't respond because you couldn't reach your client. See your July 19, 2023 and July 25, 2023 emails. Another instance of lack of responsiveness occurred following our August 8, 2023, call in which you committed to get back to EPA within 48 hours about setting up a Site visit between EPA and Mr. Fitzpatrick for the following week. Despite multiple emails and voicemail to you about this, Alita informed Leilani that she couldn't confirm a Site visit because she had not been able to speak with your client despite arranging for a call at various times. Another example of the lack of response occurred when you

cancelled the call scheduled for August 15, 2023 because you had not been able to reach your client. Leilani immediately called asking you to call her right away, but received no response. EPA lacks confidence that your client is prepared to consensually conduct the cleanup.

You commented that EPA's second draft of the Order did not contain a redline showing rejections of your suggested changes to the opening draft of the Order. As noted in our transmittal email dated August 8, 2023, EPA carefully reviewed all of your suggested changes and comments. EPA worked off its opening draft of the Order, signaling in the second draft those proposed changes that EPA was able to accept. It is not commonplace to send a redline of EPA's rejections of a respondent's comments. In EPA's second draft, EPA accepted many of Respondent's proposed changes, and if we didn't outright accept a proposed change, EPA made other changes in an effort to address the comment. EPA's second draft also included a response to any margin comments made by Respondent. On the August 8th call, EPA also went through the Work to Be Performed Section of the Order to specifically discuss Respondent's concerns and how EPA addressed them in the second draft of the Order.

You also commented in your email that the current management of LFP had no role in letting the Site structures fall into disrepair. Please note that CERCLA's liability scheme has been held to involve strict liability (without regard to fault), and under CERCLA Section 107(a), current owners are potentially liable for cleanup and/or EPA's costs. As you know, EPA notified LFP of its potential liability.

In our August 8th call, you requested a further extension for LFP's response to EPA's CERCLA Section 104(e) Request for Information. You stated that your client was focusing on undertaking the work under the draft Order and that you needed to discuss the response but had not been able to reach your client. EPA indicated that it would consider the request. As noted above, the due date for your client's response to the Request for Information was August 18, 2023. Contrary to the assertion in your email, EPA was not being punitive by not extending the response due date. EPA had already granted a 30-day extension for the response, giving your client almost two months to gather the relevant documents and submit a response. The asserted focus on the cleanup and the Order does not appear accurate.

Based on the totality of the circumstances, EPA felt it was appropriate to set a deadline of Monday, August 21, 2023, which was not met, to receive any final comments on the Order in an effort to move the negotiations to completion by the end of the August. Leilani called you again early last week (prior to her absence) to discuss your August 18 email and left you a message to call her as soon as you could. EPA has not received any communication from you or your client since then. Given the current situation, EPA does not believe continuing these negotiations will result in expeditious conclusion of a consent order for cleanup of the Site.

Sincerely, Virginia


Virginia Capon, Chief
New York/Caribbean Superfund Section

New York/Caribbean Superfund Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway – 17th Floor
New York, NY 10007
(212) 637-3163
capon.virginia@epa.gov

**From:** John Ahearn <jahearn@couchwhite.com>
**Sent:** Friday, August 18, 2023 4:13 PM
**To:** Davis, Leilani <Davis.Leilani@epa.gov>; Alita Giuda <agiuda@couchwhite.com>
**Cc:** Chong, Margaret <Chong.Margaret@epa.gov>
**Subject:** RE: Former CP Rail Maintenance Yard Site

Leilani,

First, to be clear, our client is LFP of Whitehall, LLC (the "Company"), which has been eager and willing to undertake this cleanup in cooperation with EPA since being contacted in June of 2022 by EPA after the Trust involved purchased the Company in March of 2022. Since June of 2022, the Company has taken all steps to provide the EPA the information it requested, attend numerous phone calls, provided comments on documents on EPA's timeline, and meet all demands by EPA despite the demands' unreasonableness and failure of EPA to provide the same courtesies. The EPA also fails to recognize the current management of the Company has no role in letting the structures on the property fall into their current state or in failing to remedy any of the conditions that led to the current matter, and that, absent the delays resulting from EPA's lack of response, the Company would have moved forward with the cleanup last year.

It is truly unfortunate that the EPA has decided to take such an uncooperative stance and attempted to apply pressure and threats to demand unreasonable timelines on this matter, and in particular, response on the Order. The Company was informed, by you, that such an Order was coming forthwith last year, however, you provided no draft until June 21 of this year. Despite the Company's willingness and ability to conduct the cleanup last fall, the EPA stalled and prevented the Company from doing so. It is very disappointing that the EPA, and yourself, could not afford us the professional courtesies of the time to schedule a meeting with our client and conduct review and revision of an extremely dense document that has potential implications of millions of dollars. This time of year is extremely busy for Mr. Fitzpatrick and as an officer of the Court, let alone as a courtesy to this firm, it is unacceptable that you attempt to reprimand us for not having a necessary, critical and difficult conversation with Mr. Fitzpatrick on your preferred timetable. He, and the Company, have never been exposed to CERCLA or the EPA before, so I would ask that the EPA consider the difficulty of counseling the Company on the enormous costs and legal liabilities incorporated in the Order, and the same issues should a voluntary cleanup not be performed. Especially given that the EPA accepted none of our changes to the draft, including statements that should not be controversial, such as the fact that the Company has been willing to conduct this cleanup since June, 2022, we are obligated to counsel the Company that EPA is not likely to negotiate to any meaningful extent so that the Company understands what the Order, and the

working relationship with EPA, would be like. As a side note, it is commonplace to provide a redline back to us showing the EPA's repeated rejections of our proposed changes, instead of making it incumbent upon us to create our own redline. Your inappropriate tone below, coupled with this type of disingenuous behavior, does not give us confidence that you are being forthright with us and operating in good faith. (To say nothing of the difficulty of negotiating with an entity that gives exactly zero in negotiations with a willing volunteer.)

Regarding the document demands, as you know we let the EPA know last week during our call that we could not continue to work through the Order and provide draft responses to the Request for Information, let alone for the Company to gather the voluminous documents, including countless sensitive and confidential business records for a number of corporate entities as directed by EPA's intrusive document demands. You indicated last week that you understood the concern and agreed to consider what extension would be warranted to allow the Company to focus on responding to the Consent Order. Because we have been focusing on review of the Consent Order (including all of the changes EPA rejected) and seeking discussions with the Company on it, the Company will not be in a position to provide responses today. This is particularly the case given EPA's single-day notice of the same. EPA's refusal to grant the extension seems punitive and is certainly counter-productive. Given the significant demands that the Company must accept to move forward which – again – EPA refused to compromise on at all – ensuring that the Company is properly counseled is critical. Your rebuke of our apparent failure to act in accordance with the timelines you believe are appropriate will not be countenanced. We have been acting in good faith, and have been the recipient of months-long delays, refusal to negotiate or accept any of our changes to the Order, and even the lack of professionalism to include a redline showing us that you accepted none of our proposed changes.

It is our hope that we can engage in a civil and cordial manner on this matter, so please do not engage in threats and conduct like this again. All such communications accomplish is to discourage a volunteer that has been acting entirely in good faith from continuing to do so. Further, to threaten to shut down the negotiation process entirely after *one week* longer than the EPA views is necessary – when EPA disappeared for six months – is not good faith. Please give us the professional courtesy of an opportunity to fully counsel our client.

Thank you.

**JOHN E. AHEARN, III, ESQ.**
Partner

518.320.3444  direct
518.426.4600  office

**COUCH WHITE, LLP**
540 Broadway
PO Box 22222
Albany, NY 12201

couchwhite.com

CONFIDENTIALITY – PRIVILEGE NOTICE: The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, please contact us via email or by phone at 518-426-4600. Thank you.

**From:** Davis, Leilani <Davis.Leilani@epa.gov>
**Sent:** Thursday, August 17, 2023 10:04 AM
**To:** John Ahearn <jahearn@couchwhite.com>; Alita Giuda <agiuda@couchwhite.com>
**Cc:** Chong, Margaret <Chong.Margaret@epa.gov>
**Subject:** Former CP Rail Maintenance Yard Site

John and Alita,

EPA is extremely disappointed that yesterday's meeting was cancelled due to your inability to meet with your client, Nektarios J. Fitzpatrick, to discuss the draft settlement agreement and a potential Site visit. As we previously have discussed concluding negotiations on the terms of the settlement by the end of August, based on the cancellation of yesterday's call, and that you have not responded to the revised agreement that I sent to you last week, EPA is concerned that this goal may not be achieved.

If I do not receive your comments on the draft settlement agreement by COB Monday, August 21, 2023, EPA will be left with no choice but to take this as an indication that your client is no longer interested in conducting the removal action under a consensual agreement with EPA. If that is the case, since this work must be conducted soon and in a safe and appropriate manner, EPA will have to explore other alternatives for cleaning up the Site, including the issuance of a unilateral administrative order directing your client to perform the work or EPA conducting the work itself. Note that in my experience, when EPA conducts the work, it is often significantly more costly than a private party performing the work under EPA oversight.

Also, please note that the Request for Information that was issued to your client on June 21, 2023 is due tomorrow, August 18, 2023. At our last meeting, you requested that this due date be extended and implied that with an extension Mr. Fitzpatrick could focus on the ongoing settlement agreement negotiations. However, given all the circumstances surrounding the Site, EPA is unable to grant this request for an extension.

Sincerely,

**Elizabeth Leilani Davis (she/her)**
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY 10007
(212) 637-3249
davis.leilani@epa.gov